# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WS, a minor, by his mother and his next best friend Caryn Sonderman, BG and CG, minors, by their father and next best friend, Matt Gill, AM and EM, minors, by their father and next best friend, Andrei Marcu, QC, a minor, by his mother and next best friend, Gretchen Brocard, CH, KH, SH, and LH, minors, by their father and next best friend, John Hanson, EW, a minor, by her mother and next best friend, Erin White,<br><br>    Plaintiffs,<br>vs.<br><br>CHRIS RAGSDALE, Superintendent of the Cobb County School District; and COBB COUNTY BOARD OF EDUCATION,<br><br>    Defendants. | Case No. 1:21-cv-01560-TWT<br><br>**DEMAND FOR JURY TRIAL** |

### PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR <u>TEMPORARY RESTRAINING ORDER</u>

Plaintiffs submit this reply to Defendants' Response in opposition to Plaintiffs' Motion for Temporary Restraining Order by submitting the following for the Court's consideration:

## INTRODUCTION

When a community has been abandoned by its government, whereby its government has succumbed to politics, popular opinion, and/or fear of lawsuits rather than protecting its citizens, where does that community turn to for help? The Defendants would have this Court say simply, "it is out of our control," and wash Defendants' hands of the issue, thereby leaving the Plaintiffs helpless with no means to protect themselves. As will be shown below, it is clear that the Defendants have completely abandoned their duty to protect the Plaintiffs and all of Cobb County's school children. The Plaintiffs ask this Court, as a last resort, to review the available data and protect the Plaintiffs from continuing physical and mental danger.

In all the lengthy soliloquies in its Response and declarations submitted to this Court for consideration, the Defendants lack one key element – <u>science</u>. In the 26 paragraphs of the Declaration filed by Dr. Janet Memark, the 30 paragraphs of the Declaration filed by Ms. Melanie Bales, and the entirety of the available literature available on the website for the Centers for Disease Control and Prevention ("CDC"), the following are the peer-reviewed studies showing the effects of prolonged (greater than 4 hours) use of commonly-used face masks on elementary school-aged children:

<u>NOTHING</u>

In the 26 paragraphs of the Declaration filed by Dr. Janet Memark, the 30 paragraphs of the Declaration filed by Ms. Melanie Bales, and the entirety of the

available literature available on the website for the CDC, the following are the peer-reviewed studies showing the effects of prolonged (greater than 4 hours) use of commonly-used face masks on middle school-aged children:

<div style="border:1px solid black; text-align:center;">AGAIN NOTHING</div>

In the 26 paragraphs of the Declaration filed by Dr. Janet Memark, the 30 paragraphs of the Declaration filed by Ms. Melanie Bales, and the entirety of the available literature available on the website for the CDC, the following are the peer-reviewed studies showing the effects of prolonged (greater than 4 hours) use of commonly-used face masks on high school-aged children:

<div style="border:1px solid black; text-align:center;">ONCE AGAIN NOTHING</div>

Each one of those empty boxes are opportunities, no, duties, that the Defendants had and should have performed to ensure the safety of the children, a duty they shirked each time they failed to fill in those boxes. In fact, the only study the CDC has published or relied on for prolonged use of face masks was a study conducted in a *healthcare setting* using N95 respirators with *healthcare professionals* as the subjects of the study[1].

So, if we are going to rely on "the Science," where do we stand knowing that the Defendants have not and cannot "fill in the boxes," so to speak? We are left with the only parties to this issue, the Plaintiffs, who have actually bothered to fill in those

---

[1] https://www.cdc.gov/niosh/topics/hcwcontrols/recommendedguidanceextuse.html#risksextended

- 3 -

boxes. The Plaintiffs have followed the science. What the Plaintiffs found is irrefutable evidence that what the Defendants are doing is harming the Plaintiffs. In a BMJ (British Medical Journal) article, "Face masks for the public during the Covid-19 crisis,"[2], the researchers warn that there are real world issues and dangers with the prolonged use of face masks:

1. Wearing a face mask makes the exhaled air go into the eyes. This generates…an impulse to touch your eyes. If your hands are contaminated, you are infecting yourself;

2. Face masks make breathing more difficult. This may also worsen the clinical condition of infected people if the enhanced breathing pushes the viral load down into their lungs.

3. If face masks determine a humid habitat where the SARS-CoV-2 can remain active due to the water vapour continuously provided by breathing and captured by the mask fabric, they determine an increase in viral load and therefore they can cause a defeat of the innate immunity and an increase in infections.

Points 2 and 3 are especially troubling for students that may have come in contact with the Covid-19 virus, and whose bodies are naturally blocking the infection. The prolonged use of masks (the moist, humid environment caused by

---

[2] https://www.bmj.com/content/369/bmj.m1435/rr-40

extended breathing into the mask) actually defeats the body's natural ability to fight infection ("innate immunity"[3]) and *causes* the infection in students.

In one of the few studies published on long term use, the study showed troubling effects on the prolonged use of masks. In the article entitled, "Adverse Effects of Prolonged Mask Use among Healthcare Professionals during COVID-19," published by the *Journal of Infectious Diseases and Epidemiology*[4], which was performed on *adult healthcare workers*, the article notes:

1. Prolonged use of N95 and surgical masks by healthcare professionals during COVID-19 has caused adverse effects such as headaches, rash, acne, skin breakdown, and impaired cognition in the majority of those surveyed.

2. Exhaled $CO_2$ builds up between the mask and face, and increased levels of $CO_2$ cause confusion, impaired cognition, and disorientation.

3. The highest reported side effect was headaches with 71.4% respondents (n = 245) reporting this adverse effect. 15.2% (n = 52) stated their headaches *occurred within 1 hour of wearing the mask*, 30.6% (n = 105) after 1 hour of wearing the mask, and 29.7% (n = 102) after 3 hours or more of wearing the mask.

---

[3] https://www.frontiersin.org/articles/10.3389/fphys.2018.01487/full, "Mitochondria, Oxidative Stress and Innate Immunity"

[4] https://clinmedjournals.org/articles/jide/journal-of-infectious-diseases-and-epidemiology-jide-6-130.php?jid=jide

The side effects noted in the article *after one hour of use by trained professionals* are some of the same side effects experienced by the Plaintiffs. Now, imagine what this is like for a child or teenager after *8 hours*! An extensive study was published in 2013 in the *International Journal of Infection Control*[5] relating to bacterial control (again, the study was conducted on trained healthcare professionals). The study showed that after about 30 minutes of use, the bacterial count inside the mask started increasing significantly.[6] So now the question must be asked, "Do the dangers of the prolonged used of a mask in school-age children outweigh the danger of Covid-19?" Since the Defendants clearly failed to ask for information regarding the first part, the Plaintiffs will answer the question using the available science.

What is especially troubling is that the dangers would have been evident had the Defendants done even a modicum of research to fulfill their duty to protect the students and make an informed decision. Not only are the Defendants putting students in harm through prolonged use of face masks, the Defendants are doing it for a virus whose potential for harm for students is less than the flu. The *CDC's own data shows* that children have a lower risk of death from Covid-19 than the flu. In the article entitled, "Estimating the Risk of Death from COVID-19 vs. Influenza or Pneumonia by Age," the researchers used CDC data and found that "what is striking

---

[5] https://www.ijic.info/article/view/10788/7862

[6] *Id.*

- 6 -

is that those under the age of 25 are at significantly lower risk of death from COVID-19 than of the flu. Under our assumptions, for example, school-aged children between 5 and 14 have a 1 in 200,000 chance of dying of influenza, but a 1 in 1.1 million chance of dying of COVID-19."

Continuing to "follow the science," The *New England Journal of Medicine* studied the schools in Sweden, which opened without the use of masks. In its article entitled, "Open Schools, Covid-19, and Child and Teacher Morbidity in Sweden,[7]" the article came to the following conclusion:

> Despite Sweden's having kept schools and preschools open, we found a low incidence of severe Covid-19 among schoolchildren and children of preschool age during the SARS-CoV-2 pandemic.

The Defendants argue that if the Plaintiffs do not want to wear masks, they can simply receive "virtual instruction", Dkt. No. 5 at 7, asking the Plaintiffs to choose one danger over another. As noted by the Plaintiffs' in their Amended Complaint, the CDC itself noted that at least a quarter of the students attending virtual instruction suffered from worsened mental or emotional health[8], Dkt. No. 3, ¶ 17. This is one of the many studies that have shown the real-world effects of virtual learning on the mental and physical well-being of children.

*The only data relating to prolonged mask use is being provided by the Plaintiffs*, and the data is clear and not in dispute: the prolonged use of face masks

---

[7] https://www.nejm.org/doi/10.1056/NEJMc2026670

[8] https://www.cdc.gov/mmwr/volumes/70/wr/mm7011a1.htm?s_cid=mm7011a1_w

for more than a couple of hours causes severe mental and physical side effects; the prolonged use of face masks for more than a couple of hours reduces the effectiveness of face masks; the prolonged use of face masks for more than a couple of hours causes bacteria growth within the mask; the prolonged use of face masks for more than a couple of hours can defect the innate immunity; the prolonged use of face masks for more than a couple of hours can increase the uptake of viruses deeper into the lungs, increasing the effect of the virus.

Now that the Plaintiffs have shown that the Defendants' protection of the Plaintiffs is an abject failure, the Plaintiffs now turn to the Temporary Restraining Order.

## I. PLAINTIFFS' LIKELIHOOD OF SUCCESS ON THE MERITS.

The School District Mask Mandate violates Section 1 of the Fourteenth Amendment to the U.S. Constitution, Article VIII, Section 1, and paragraph 1 of the Georgia Constitution, and Article 1, Section 1, paragraph II of the Georgia Constitution.

### A. Heightened scrutiny, not rational basis, is the Standard of Review

In *Plyler v. Doe*, 457 U.S. 202, 221 (1982), the Court held that although, as a general matter, education is not a fundamental interest for equal protection purposes, "neither is it merely some governmental 'benefit' indistinguishable from other forms of social welfare legislation." For this reason, in *Plyler*, the Court applied a "heightened" equal protection review rather than the usual rational relationship

analysis, *Id.* at 238 (Powell, J. concurring). The *Plyler* Court stated, in words that equally apply to the facts in the present case, that "education has a fundamental role in maintaining the fabric of our society." *Id.* at 221. Plaintiffs argue, therefore, that even if their claims are not entitled to strict scrutiny review, they should receive the "heightened scrutiny" applied in *Plyler*.

The Defendants Mask Mandate fails under a heightened scrutiny test. As noted above, the Defendants failed to determine if the CDC or any other health authority had tests or data showing potential mental and physical harm to school age children through the prolonged and daily use of face masks in school. The Defendants could not have done that because the scientific body they were relying on, the CDC, did not do that. The Defendants cannot shirk their responsibility.

### B.     The Defendants still fail a Rational Basis Review

Even if the test applied is the Rational Basis test, the Plaintiffs' still prevail. Because the Defendants have completely failed to determine or even ask for data relating to long-term use of masks on school-age children, their actions cannot be deemed rational. It is the School District's responsibility to ensure the protection of children under their care, not the CDC. The School District cannot simply and blindly listen to a medical body they selected and rationally believe that is good

enough. A rational decision for the prescription of a medical device cannot be made in the complete absence of data that supports that position.

It is the complete absence of data in the present case that the Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) warned about. The *Jacobson* court held:

> Before closing this opinion, we deem it appropriate, in order to prevent misapprehension as to our views, to observe -- perhaps to repeat a thought already sufficiently expressed, namely -- that the police power of a State, whether exercised by the legislature or by a local body acting under its authority, may be exerted in such circumstances or by regulations so arbitrary and oppressive in particular cases as to justify the interference of the courts to prevent wrong and oppression.

*Jacobson*, 197 U.S. at 38.

The failure to seek data and studies to examine the effects of prolonged use of face masks on school-age children has led to a Mask Mandate that is completely arbitrary, resulting in the "wrong" for which the Plaintiffs seek redress in this Court.

The Court in *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) stated, "At the same time, the State's present determination—that the maximum number of adherents who can safely worship in the most cavernous cathedral is zero—appears to reflect not expertise or discretion, but instead insufficient appreciation or consideration of the interests at stake." (Roberts, C.J., concurring in the denial of injunctive relief). The *South Bay* Court further states, "But the Constitution also entrusts the protection of the people's rights to the Judiciary—not despite judges being shielded by life tenure, but because they are.

<u>Deference, though broad, has its limits</u>. *Id.* (emphasis added) (internal citation omitted).

Without supporting data, the mask mandate cannot be anything but arbitrary because it is an uninformed decision, the same kind of "insufficient appreciation or consideration" the *South Bay* Court warned against. *Id.* Thus, the Plaintiffs prevail even under a Rational Basis review.

## II. DEFENDANTS' SOVEREIGN IMMUNITY CLAIM IS INCORRECT AND MOOT.

As held by the Court in *Lapides v. Board of Regents*, 535 U.S. 613, 614 (2002), "This Court has established the general principle that a State's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity." The Court held, "We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity." *Id*. at 624. The Defendants in this action voluntarily removed the case from State to Federal court, thereby waiving any immunity.

Further, House Resolution 1023 (passed by both the House and Senate) was voted and approved last year by the citizens of Georgia. House Resolution 1023 amended the Georgia Constitution to waive sovereign immunity in claims against the government seeking redress for violations of the laws of the Constitutions of the State of Georgia or the United States.[9] Pursuant to the amendment, the Plaintiffs are

---

[9] https://ballotpedia.org/Georgia_Amendment_2,_Allow_Residents_to_Seek_Declaratory_Relief_from_Certain_Laws_Amendment_(2020)

- 11 -

clarifying through their Amended Complaint that the Defendants are the Cobb County School District, by and through its Superintendent and the Cobb County School Board of Education.

### III. THE BOARD OF EDUCATION IS A PROPER DEFENDANT.

The Cobb County School Board of Education ("School Board") should be kept as Defendants in this matter. The School Board has in the past and in the recent times exerted complete operational control over the school superintendent, the only employee of the School Board. For example, as recently as February of 2021, the School Board directed the superintendent to fire the current School District law firm. This kind of operational control over the superintendent portends the need to ensure that both the School District and the Board need to be enjoined and restrained.

### IV. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION.

The Defendants allege that the Plaintiffs have not established the likelihood of any future injury, alleging that the injuries are "mostly consisting of inconvenience and discomfort." Dkt. No. 5 at 20. The injuries are not speculation, as asserted by the Defendants. The Plaintiffs have asserted real world injuries and harms that are supported by the studies described above, studies that the Defendants either ignored or did not bother to look for. The studies show drastic mental and physical harm suffered by health care professionals even after only a couple of hours of use of a face mask. Headaches, reduced cognition, infections, acne . . . the list

goes on and on. This is not speculation – this is the cold truth backed by actual data and studies that the Defendants wish to ignore or have completely failed to look into to.

Further, the status quo argued by the Defendants repeatedly ignores the daily injuries to Plaintiffs. The Plaintiffs plead that this Court maintain the status quo of the Plaintiffs' physical and mental well-being, rather than allowing the Defendants to continually damage Plaintiffs, damage that may never be recoverable. Further, as noted in the Plaintiffs' Amended Complaint, the Defendants have used the mask mandate to avoid implanting Individualized Educational Plans ("IEPs") and other extra help, in violation of federal law.

With regard to the delay, there are several reasons why this matter is being brought before the Court at this time. The physical and mental damage to the children has reached a point whereby the Plaintiffs, previously hoping that the School District would listen to the science and data, had no option other than to bring this action before the Court.

## V. PLAINTIFFS DO NOT HAVE ADEQUATE REMEDIES AT LAW.

It is absolutely absurd that the Defendants would allege that "the supposed 'physical and mental harm' they claim to have suffered is no worse than the inconveniences everyone has experienced from wearing a mask in public during the pandemic." Dkt. No. 5 at 21. First, the "public" are not school-aged children trying to learn and be educated so that they can go to college or learn a trade. Secondly, the

"public" rarely, if ever, wears a face mask for 8 to 10 hours a day. Even the school superintendent and several school board members quickly remove their face masks during School Board meetings and keep them off the entire meeting. And even the suggestion that money would provide adequate relief against the physical and mental harm suffered by the Plaintiffs is categorically insulting to the plight of the Plaintiffs. The Plaintiffs quite simply have no other adequate remedy at law.

## VI. A TEMPORARY RESTRAINING ORDER WILL NOT CAUSE MORE HARM THAN IT SOLVES.

As noted above, the CDC's own data shows a low risk posed by Covid-19 to school aged children[10]. So, if the risk to the students is low, why is the School District forcing children to wear masks for 8 hours a day? Is it a potential danger to the educators? As also noted above, the chance of children spreading the disease is low, evidenced by the real-world situation of Sweden. Teachers and administrators can continue to wear masks to protect themselves. Is it a potential danger of bringing Covid-19 from the school into a home? As noted again by the CDC's own data (cited in the Motion), the potential for contraction of Covid-19 from surface contact is almost non-existent. Dkt. No. 4 at 5; Dkt. No. 3 at ¶¶ 17-24. Thus, parents of school-aged children that fear that Covid-19 can be brought in from the school can wear a mask in the home to protect themselves. Dkt. No. 4-1 at 10-11. This is actually in accordance with CDC guidelines.

---

[10]https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/transmission_k_12_schools.html

## CONCLUSION

The Plaintiffs followed the science and data, the Defendants did not. The Plaintiffs have met each prong of the framework to have a restraining order issued.

Respectfully submitted this 3rd day of May, 2021.

/s/ *Robert A. Madayag*
Robert A. Madayag
Georgia Bar No. 123699
Lee & Hayes, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 736-1917
Facsimile: (404) 815-1700
Robm@leehayes.com

Mitch J. Skandalakis
Georgia Bar No. 649620
Skandalakis Law Group LLC
3049 Marietta Hwy, Suite 120
Canton, GA 30114
Telephone: (770) 693-8715
Mitch@skandalakislawgroup.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1(B). In addition, I certify that on this 3rd day of May, 2021, I served the foregoing **PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** by filing a copy of the same using the CM/ECF electronic-filing system, which will deliver a copy to the following:

>Brandon O. Moulard
>brandon.moulard@nelsonmullins.com
>Sherry Culves
>sherry.culves@nelsonmullins.com

/s/ *Robert A. Madayag*
Robert A. Madayag
Georgia Bar No. 123699

Lee & Hayes, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 736-1917
Facsimile: (404) 815-1700
Robm@leehayes.com